UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLIN PENN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WARDEN OF KERN VALLEY STATE PRISON, *et al.*,<br><br>　　　　Defendant. | Case No. 1:18-cv-01482-AWI-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS[1]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. No. 19) |

Plaintiff Marlin Penn ("Plaintiff" or "Penn") is a state prisoner proceeding *pro se* in this rights action filed under 42 U.S.C. § 1983. Plaintiff's second amended complaint is before the court for screening. (Doc. No. 19, "SAC"). The undersigned recommends Plaintiff be permitted to proceed with his cognizable claims and that all other non-cognizable claims and improper defendants be dismissed.

## I. BACKGROUND

**A. Procedural Posture**

Penn filed his initial complaint on October 26, 2018. (Doc. No. 1). The then-assigned magistrate judge granted Penn's motion for leave to proceed *in forma pauperis* on November 6,

---

[1] The undersigned submits these factual findings and recommendations to the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2019).

1

2018. (Doc. No. 7). On November 22, 2019, the Court adopted the then-assigned magistrate's findings and recommendations that determined that Penn stated a retaliation claim against Defendants Lucas and Hernandez and that recommended all other claims and defendants be dismissed. (Doc. No. 15). The Court also permitted Penn to file an amended complaint. (*Id*.) Penn filed a first amended complaint. (Doc. No. 16, "FAC"). After screening, the then-assigned magistrate judge found the FAC deficient because it was not freestanding but referenced Plaintiff's initial complaint and subsequent briefing. (Doc. No. 18). The Court directed Penn to either file a second amended complaint that is complete on its face and without reference to prior submissions, or to withdraw his FAC and proceed on the claims sanctioned by the court. (*Id*.). Penn elected to file a second amended complaint. (Doc. No. 19, "SAC").

**B. Summary of SAC**

Penn is currently incarcerated at Salinas Valley State Prison ("SVSP") in Soledad, California. (Doc. No. 10). The SAC alleges constitutional violations arising out of Penn's confinement at Kern Valley State Prison ("KVSP"). (Doc. No. 19 at 6). Plaintiff names six defendants, all of whom are employed by the California Department of Corrections and Rehabilitation ("CDCR") at KVSP: A. Lucas, appeals coordinator; M. Hernandez, correctional counselor II; the warden of KVSP;[2] G. Gebremedhin, correctional counselor I; Lt. Sotelo, correctional lieutenant; M. Jimenez, correctional officer; and T. Howard, correctional officer. (*Id*. at 2-4). Penn claims defendants violated his Sixth, Eighth, and Fourteenth Amendment rights. (*Id*. at 4).

The facts in support are summarized as follows. On November 24 and 29, 2017, Jimenez and Howard, at the direction of Hernandez, issued two false rules violation reports ("RVRs"), which were then erroneously classified as "serious" by Hernandez. (*Id*. at 5, 7). Hernandez then used the RVRs to place Penn on "c-status." (*Id*. at 5-6). Upon filing an administrative appeal, Penn claims Hernandez retaliated against him by personally warning him that he would "take action" against him and, if he did not withdraw his administrative appeal, he would make Penn

---

[2] Plaintiff does not provide the name of the warden. Accordingly, the court will refer to this defendant as "warden." Plaintiff should provide notice to the court upon discovery of the warden's name.

2

wish he had withdrawn it. (*Id*. at 6, 9). Further, Penn states that when Hernandez interviewed him about his administrative appeal, he told him to withdraw his complaint or else Penn would "regret it." (*Id*. at 9). Lucas, Gebremedhin, and the Warden knew about Hernandez's retaliation and failed to intervene. (*Id*. at 6). Penn further states Hernandez "instructed" each defendant to retaliate against him, assisted Jimenez and Howard in drafting the RVRs, instructed Gebremedhin to place him on "c-status," and asked Lucas and the warden to "cover all this up." (*Id*.).

Penn contends that Hernandez directed Lucas to circumvent all his appeals. (*Id*. at 7). Lucas refused to file Penn's six staff complaints, thereby engaging in biased and prejudicial behavior "geared to protect staff," rather than protecting his due process rights. (*Id*. at 10). Lucas also labeled Penn as an inmate who was abusing the appeals system. (*Id*. at 10). Sotelo falsified an administrative segregation order which claimed Penn threatened staff. (*Id*. at 7). Penn states that the Warden disregarded his due process rights and ignored his complaints against prison staff. (*Id*. at 12). Instead of addressing his complaint, the Warden placed Penn in a housing unit without electricity for two months, thereby subjecting him to cruel and unusual punishment. (*Id*. at 12). Penn claims that all defendants deprived him of due process, loss of good time credits, and inflicted cruel and unusual punishment on him. (*Id*. at 6).

As a result of defendants' actions, Penn admits he suffered "no physical injury" but claims he is under constant stress, takes medication to sleep, and was placed on a seven-day stress assessment. (*Id*. at 7). As relief, Penn requests that all his complaints against staff and administrative appeals be investigated, that a restraining order against Lucas be issued, and that he be transferred to another prison. (*Id*.). Penn also seeks "actual and punitive" damages. (*Id*.).

## II. APPLICABLE LAW

### A. Screening Requirements and Fed. R. Civ. P. 8

Under 28 U.S.C. § 1915A, a court is required to screen a prisoner's complaint that seeks relief against a governmental entity, its officers, or its employees. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C.

3

§§ 1915A(b)(1), (2); *see also* 28 U.S.C. § 1915(e)(2)(b)(ii) (governing actions proceeding *in forma pauperis*).

A claim fails to state a claim upon which relief may be granted if it appears that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Palmer v. Roosevelt Lake Log Owners Ass'n, Inc.*, 651 F.2d 1289, 1294 (9th Cir. 1981). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

During screening, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Rex Hosp. Tr.,* 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003) (the court must construe *pro se* pleadings liberally and afford the *pro se* litigant the benefit of any doubt). The court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, (2009) (quotation marks omitted); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief. . .." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted). Courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

If the court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). A district court should not, however, advise the litigant on how to cure the defects. Such advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.

Examples of immunity from relief for consideration during screening, include, but are not limited to, quasi-judicial immunity, sovereign immunity, or qualified immunity. Additionally, a plaintiff may not recover monetary damages absent a showing of physical injury. *See* 42 U.S.C. § 1997e(e). In other words, to recover monetary damages, a plaintiff must allege physical injury that need not be significant but must be more than *de minimis*, except when involving First Amendment claims. *Oliver v. Keller*, 289 F.3d 623, 626-28 (9th Cir. 2002) (surveying other circuit courts for the first time to address injury requirement for monetary damages, and agreeing with the Second, Fifth, and Eleventh Circuits on Prison Litigation Reform Act's injury requirement).

Finally, the Federal Rules of Civil Procedure permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrence" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

**B. Section 1983**

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). To state a claim under § 1983, a plaintiff must show that a defendant acting under color of state law caused an alleged deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). The plaintiff can satisfy the causation requirement by showing either: (1) the defendant's "personal involvement" in the alleged deprivation or (2) a "sufficient causal connection" between the defendant's conduct as a supervisor and the alleged deprivation. *See King v. Cty. of Los Angeles*, 885 F.3d 548, 559 (9th Cir. 2018).

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978); *Rizzo v. Goode*, 423 U.S. 362, (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

### III. ANALYSIS

Plaintiff claims that his Sixth, Eighth, and Fourteenth Amendment rights were violated by defendants. (Doc. No. 19 at 4). As discussed below, Penn has stated First and Eighth Amendment claims but fails to state Sixth and Fourteenth Amendment violations.

**A. First Amendment Retaliation Claim as to Defendants Hernandez & Lucas**

"Prisoners have a First amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). To prevail on a retaliation claim under the First Amendment, a plaintiff must show that: (1) he engaged in a protected conduct; (2) a state actor took some adverse action against him; (3) the protected conduct was a "substantial" or "motivating" factor behind the adverse action; (4) the adverse action would chill

6

a person of ordinary firmness from future exercise of First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Penn has stated retaliation claims against defendants Hernandez and Lucas. Penn alleges Hernandez warned him that he would "take action" against him for filing an administrative appeal and that if he did not withdraw his appeal, he would make plaintiff wish he had withdrawn it. (Doc. No. 19 at 6, 9). Penn also states that Hernandez told him to withdraw his complaint or else he would "regret it" and placed Penn on "c-status." (*Id*. at 9., 5-6). As to Lucas, Penn alleges that Lucas refused to file his six staff complaints, thereby engaging in biased and prejudicial behavior "geared to protect staff." (*Id.* at 10). Lucas then labeled Penn as an inmate who was abusing the appeal system. (*Id*.). These allegations satisfy each of the five elements of a retaliation claim. Filing administrative grievances is protected conduct. Hernandez and Lucas acted adversely against Penn—assigning him a restrictive classification, refusing to file his grievances, and implying that something bad would happen to Penn if he did not withdraw his grievances. Filing a grievance is protected conduct. These actions would chill a person of ordinary firmness from filing future appeals and staff complaints and lacked a legitimate penological goal. Accordingly, Penn should be permitted to proceed on his First Amendment retaliation claims against Hernandez and Lucas.

**B. Eighth Amendment and First Amendment as to Warden**

Penn claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated. (Doc. No. 19 at 6). To state an Eighth Amendment cruel and unusual punishment claim based on conditions of confinement, the plaintiff must prove a denial of the "'minimal civilized measure of life's necessities,' occurring through 'deliberate indifference' by prison personnel or officers." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, (1981). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted) (noting that "[b]ecause routine discomfort is part of the penalty that

criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment [conditions of confinement ] violation"); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("The Constitution 'does not mandate comfortable prisons.'"). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835. To satisfy the first prong, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *See id.* To satisfy the second prong, the official must know of and disregard an excessive risk to inmate safety. *See id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.*

Here, Penn claims that Jimenez, Howard, and Sotelo "knowingly falsified state of California documents with malicious & sadistic intent to inflict cruel and unusual punishment." (Doc. No. 19 at 6). Plaintiff alleges that the falsified RVRs caused the loss of good time credits and privileges, which ultimately caused cruel and unusual punishment. (*Id.* at 8). Penn also states that his seven-day placement in administrative segregation and his two-month placement in a housing unit without electricity constituted cruel and unusual punishment. (*Id.* at 11-12).

Penn's loss of good time credits and privileges and his placement in administrative segregation fails to state an Eighth Amendment cruel and unusual punishment claim. The loss of good time credits and privileges does not rise to the level of cruel and unusual punishment. *See Smith v. Daguio*, No. 18-06378, 2019 U.S. Dist. LEXIS 57749, 2019 WL 1472308, at *4 (N.D. Cal. Apr. 1, 2019) (stating that "[t]here is no law that supports the claim that the loss of privileges amounts to cruel and unusual punishment" and therefore dismissing the plaintiff's Eighth Amendment claim). And "[m]ere placement in administrative segregation or isolation does not violate the Eighth Amendment." *Salstrom v. Sumner*, No. 91-15689, 1992 U.S. App. LEXIS 7911, at *3 (9th Cir. Apr. 10, 1992); *Berry v. Gomez*, No. 98-16357, 2000 U.S. App. LEXIS 3622, at *2 (9th Cir. Mar. 3, 2000) (Plaintiff failed to state any facts "indicating that even

8

long exposure to the conditions alleged to exist in administrative confinement amounts to cruel and unusual punishment within the meaning of the Eighth Amendment.").

However, to the extent Penn was without electricity in his cell for two months, he has stated a claim of Eighth Amendment cruel and unusual punishment. Penn claims that the Warden "ordered his staff to place [plaintiff] in a housing unit that had no electricity and ordered [plaintiff] to stay in that cell for two months." (Doc. No. 19 at 12). Electricity provides lighting and temperature control, which courts in this district have held to be attributes of adequate shelter under the Eighth Amendment. "Adequate lighting is one of the fundamental attributes of adequate shelter required by the Eighth Amendment." *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (plaintiff stated an Eighth Amendment claim where "the lighting was so poor that it was inadequate for reading and caused eyestrain and fatigue and hindered attempts to ensure that basic sanitation was maintained"); *see also Jackson v. Cash*, No. EDCV 14-02384-JVS (DTB), 2016 U.S. Dist. LEXIS 150680, at *10 (C.D. Cal. Sept. 21, 2016) (plaintiff stated an Eighth Amendment claim where prison cell had no electricity and therefore no fan to cool plaintiff's cell from excessive heat); *Adler v. McDonald*, No. 2:15-cv-0789 CKD P, 2015 U.S. Dist. LEXIS 69301, at *4 (E.D. Cal. May 28, 2015) (plaintiff stated an Eighth Amendment claim where prison cell had no adequate plumbing or electricity).

Although there is no *respondeat superior* liability in § 1983 claims, *see Iqbal*, 556 U.S. at 678, here Penn alleges that the Warden personally ordered him to be placed in a cell without electricity. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Accordingly, the Warden is the proper defendant for this Eighth Amendment claim. Construing Penn's electricity claim liberally, he has shown that the conditions of his confinement posed a substantial risk of harm, and that the Warden knew of and disregarded an excessive risk to his safety. *See Farmer*, 511 U.S. at 835, 837. Further, these same actions raise a First Amendment retaliation claim to the extent Penn attributes the Warden's decision to place him in the cell without electricity because of his writing grievances.

**C. No Sixth Amendment Claim**

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime

shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." U.S Const. Amend. VI. Penn has not provided any facts that lead the Court to find that he has stated a Sixth Amendment claim. Rather, Penn simply lists the Sixth Amendment as one of his rights he alleges defendants violated but provides no facts to support this claim. (Doc. No. 19 at 4). Accordingly, Penn's Sixth Amendment claim should be dismissed.

### D. No Fourteenth Amendment Due Process Claim

Penn contends that Jimenez and Howard violated his due process rights when they falsified two RVRs for a minor infraction. (Doc. No. 19 at 5). The filing of a false RVR by a prison official against a prisoner is not a *per se* violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.); *Harper v. Costa*, No. CIVS07-2149 LKK DAD P, 2009 WL 1684599, at *2-3 (E.D. Cal. June 16, 2009) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983."), *aff'd* 393 F. App'x 488 (9th Cir. 2010).

The filing of false allegations by itself does not violate a prisoner's constitutional rights as long as: "(1) the prisoner receives procedural due process before there is a deprivation of liberty as a result of false allegations, and (2) the false allegations are not in retaliation for the prisoner exercising constitutional rights." *Richardson v. Tuman*, No. 1:18-cv-01166-EPG-PC2019, U.S. Dist. LEXIS 26178, at *13 (E.D. Cal. Feb. 19, 2019); *see Muhammad*, 2010 WL 1260425, at *3 ("As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983."); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not

actionable under § 1983 if prison officials provide the prisoner with procedural due process protections).

### 1. Retaliation

Although Penn states that the RVRs were issued in retaliation, Penn does not state what protected activity he took part in prior to the issuance of the RVRs, thereby causing retaliation. Unlike Penn's retaliation claims *supra* based on his filing of grievance appeals, Penn does not state what actions he took, if any, that triggered defendants Jimenez and Howard to file the false RVRs. According to the timeline, the RVRs were issued on November 24, 2017 and November 29, 2017. The other acts of retaliatory conduct of which Penn complains occurred <u>after</u> the RVRs were issued. Thus, the SAC fails to state a retaliation claim in relation to the RVRs.

### 2. Fourteenth Amendment Due Process

The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A § 1983 claim based upon procedural due process has two elements: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

#### a. The Liberty Interest

A liberty interest which implicates the protections of due process arises from one of two sources: The Due Process Clause of the Fourteenth Amendment or state law. *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005). When deciding whether the Constitution itself protects an alleged liberty interest of a prisoner, the court should consider whether the practice or sanction in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *accord Hewitt v. Helms*, 459 U.S. 460, 466-70 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in good-time credits, *see Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); in remaining in the general population, *see Sandin*, 515 U.S. at 485-86; *Hewitt*, 459 U.S.

at 468; or in not losing privileges, *Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976).

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin*, 515 U.S. at 481-84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. When conducting the *Sandin* inquiry, courts look to three factors in determining whether an atypical and significant hardship exists: (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration and intensity of the conditions; and (3) whether the change in confinement would "inevitably affect the duration of [the prisoner's] sentence." *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013) (citation and internal quotation marks omitted). Courts applying the *Sandin* factors have determined that, in certain circumstances, prisoners may have a liberty interest in avoiding administrative segregation. *See Jackson v. Carey*, 353 F.3d 750, 755-57 (9th Cir. 2003). On the other hand, courts have held that prisoners have no liberty interest in their classification status or in their eligibility for rehabilitative programs. *See Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

At this stage of the litigation, construing Penn's SAC liberally, the Court finds that Penn has alleged enough facts to indicate that he could have been deprived of a liberty interest arising from state law. Penn alleges that Sotelo placed plaintiff in administrative segregation based on Sotelo's false claim that plaintiff threatened staff. (Doc. No. 19 at 7). Depending on the circumstances of Penn's administrative segregation, he may have a liberty interest in avoiding it. Accordingly, the Court must inquire whether the procedures followed by the State [in placing plaintiff in administrative segregation] were constitutionally sufficient." *Swarthout*, 562 U.S. at 219.

### b. The Process That Is Due

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the

12

charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

Penn does not sufficiently allege that he was deprived the process required under the Fourteenth Amendment. Penn alleges only that he was placed in administrative segregation but fails to state facts allowing the Court to determine whether the process he received was constitutionally deficient under *Wolff*. For example, Penn fails to state who presided over his hearing, whether he was provided with a statement describing the charges against him, and whether he had an opportunity to present witnesses. Because Penn fails to allege any facts that he was denied the procedures required by *Wolff,* the undersigned finds Penn has failed to state any due process claim.

## IV. FINDINGS AND RECOMMENDATIONS

Based on the above, the undersigned finds Plaintiff's SAC states a cognizable claim against Defendants Hernandez and Lucas for retaliation in violation of the First Amendment and Defendant Warden for Eighth Amendment cruel and unusual punishment and First Amendment Retaliation. The SAC otherwise fails to state any other cognizable claim against any of the other defendants. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is **RECOMMENDED**:

1. This action proceeds on Plaintiff's second amended complaint for violations of Plaintiff's First Amendment rights against Defendants Hernandez and Lucas and Plaintiff's Eighth and First Amendment rights against Defendant Warden. (Doc. No. 19).

2. All other claims and defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: July 8, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE