1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

MARLIN PENN,

Case No.  1:18-cv-01482-AWI-HBK (PC)

12

Plaintiff,

FINDINGS AND RECOMMENDATIONS TO
GRANT DEFENDANTS' EXHAUSTION-
BASED MOTION FOR SUMMARY
JUDGMENT

13

v.

14

A. LUCAS, Appeals Coordinator; M.
HERNANDEZ, Correctional Counselor,
II.; CHRISTIAN PFEIFFER, Warden
KVSP;

FOURTEEN-DAY OBJECTION PERIOD

15

16

(Doc. No.  54)

Defendants.

17

18

Pending before the Court is the exhaustion-based motion for summary judgment filed on

19

behalf of Defendants Hernandez and Pfeiffer.  (Doc. No. 54, "MSJ").  Plaintiff filed a response in

20

opposition.  (Doc. No. 64-65).  Defendants filed a Reply.  (Doc. No. 69).  For the reasons below,

21

the undersigned recommends the district court grant Defendants' MSJ.

22

**BACKGROUND**

23

**A.  Summary of Plaintiff's Operative Complaint**

24

Plaintiff Marlin Penn is a prisoner proceeding pro se on his second amended complaint

25

filed under 42 U.S.C. § 1983 stemming from events that occurred while confined at Kern Valley

26

State Prison.  (Doc. No. 19, "SAC").  As screened, the SAC stated a First Amendment retaliation

27

claim against Defendants Hernandez and Lucas when Hernandez warned Plaintiff that he would

28

"take action" against him for filing an administrative appeal; and, if he didn't withdraw his

appeal, he would make Plaintiff wish he had withdrawn the appeal.  (Doc. No. 23 at 7).  Plaintiff also states that Hernandez told him to withdraw his complaint or else he would "regret it" and placed Penn on "c-status."  (*Id.*).  As to Lucas, who is not a part of the instant MSJ, Penn alleges Lucas refused to file six staff complaints, thereby engaging in biased and prejudicial behavior "geared to protect staff."  (*Id.*).  Lucas then labeled Plaintiff as an inmate who was abusing the appeal system.  (*Id.*).

The SAC also stated an Eighth Amendment conditions of confinement and a First Amendment retaliation claim against Warden Pfeiffer.  Both the conditions of confinement claim and the retaliation claim stemmed from Plaintiff's allegations that that Warden Pfeiffer "ordered" staff to place Plaintiff in a cell that had no electricity for two months because of his grievance writing.  (*Id.* at 9).

**B.  Defendants' Exhaustion-Based MSJ**

Defendants Pfeiffer and Hernandez move for summary judgment on the basis that Plaintiff failed to exhaust his available administrative remedies fully and properly as to them.  (Doc. No. 54).  In support, Defendants submit: Statement of Undisputed Facts and Conclusions of Law (Doc. No. 54-3), declaration of appeals coordinator, A. Leyva, with attached exhibits consisting of over 300 pages of appeals tracking system documents (Doc. Nos. 54-4 to 54-5), declaration of Howard E. Moseley, Associate Director of the Office of Appeals (OOA) formerly named the Inmate Appeals Branch (IBA) (Doc. No. 54-6), with exhibits consisting of over 500 pages of documents titled "inmate/parolee appeals tracking system."  Defendants argue there is no genuine dispute of material fact as to whether Plaintiff failed to exhaust his administrative remedies concerning the incidents at issue.  Specifically, Defendants submit there is no grievance concerning Plaintiff's claim that Warden Pfeiffer ordered Plaintiff to a cell without electricity for two months.  (Doc. No. 54 at 2, 5-6).  Plaintiff did not mention Pfeiffer or Hernandez by name, much less raise issue with the alleged actions.  (*Id.* at 6).  Further as to Pfeiffer specifically, in Log No. KVSP-0-18-02451 on August 21, 2018, the grievance alleged "facility electricians," not Pfeiffer, turned off the water, not electric, in his cell while conducting routine maintenance and forgot to turn it on.  (*Id.* at 2).

2

### C.  Plaintiff's Opposition to Exhaustion-Based MSJ

Plaintiff opposes Defendants' MSJ.  (Doc. No. 64).  The response consists of 62 pages, including exhibits, and includes irrelevant arguments regarding a confidential settlement conference before a United States magistrate judge.  (Doc. No. 64 at 10).  Plaintiff submits a memorandum, dated June 18, 2018, attaching his "inmate/parolee appeals tracking system" documents (*id.* at 15-18), a memorandum, dated March 26, 2018, concerning an RVR and other grievances unrelated to the incident at issue in this action (*id.* at 21-29), a letter dated, January 31, 2018, authored by Plaintiff titled "staff misconduct/appeals not filed!" regarding false RVRs (*id.* at 31-43), and one alleging A. Lucas "refused to file or return" appeals (*id.* at 43), an "assignment roster" (*id.* at 46), an appeal abuse warning memo, dated October 31, 2018, noting Plaintiff filed more than one appeal for review within fourteen calendar days (*id.* at 48), a document titled "declaration" that does not contain the requisite oath (*id.* at 50), duplicative appeals tracking system (*id.* at 52-57), and a bed request dated May 10, 2018, which Plaintiff identifies as his move to the cell with no electricity (*id.* at 59-62).  As it pertains to the exhaustion of administrative remedies, Plaintiff makes one primary argument—that Defendant A. Lucas "refused to file them."  (Doc. Nos. 64-65).  Plaintiff further asserts that grievances appropriately placed in the appeal box were "not logged or returned."  (Doc. No. 65 at 3).

### D.  Defendants' Reply to Plaintiff's Opposition

In reply, Defendants argue the Court should not consider Plaintiff's conclusory assertions because they are not sufficient to raise a dispute of material fact when Plaintiff has not provided evidence to demonstrate there exists a grievance that names either Hernandez or Pfeiffer.  (Doc. No. 69 at 1-3) (other citations omitted).  Further Defendants argue Plaintiff does not deny Defendants' evidence but instead asserts Lucas lost or destroyed grievances against Hernandez and Pfeiffer.  (*Id.* at 1-2).  Defendants in closing request a hearing to address any questions of fact, if the Court is inclined to find this record presents a genuine issue of material fact.  (*Id.* at 3).  Attached to Defendants' Reply is a chart detailing the material facts, Plaintiff's opposition, and Defendants' response thereto (Doc. No. 69-1), and a Declaration of A. Lucas explaining the appeals tracking software utilized by the California Department of Corrections and Rehabilitation

3

and attesting under oath that he never lost, destroyed, or failed to respond to any of Plaintiff's

inmate grievances or appeals.  (Doc. No. 69-2).

## APPLICABLE LAW

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is

material where it is (1) relevant to an element of a claim or a defense under the substantive law

and (2) would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247 (1987).  The party moving for summary judgment bears the initial burden of proving the

absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the moving party has met this burden, the nonmoving party must go beyond the pleadings

and set forth specific facts, by affidavits, deposition testimony, documents, or discovery

responses, showing there is a genuine issue that must be resolved by trial.  *See* Fed. R. Civ. P.

56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th

Cir. 2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is

insufficient.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the

evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party,

to return a verdict in that party's favor.  *Id.*

In an exhaustion-based summary judgment motion, the defendant bears the initial burden

of establishing "that there was an available administrative remedy, and that the prisoner did not

exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the

defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence

showing that there is something in his particular case that made the existing and generally

available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of

persuasion remains, however, with defendant.  *Id.*

The undersigned has carefully reviewed and considered all arguments, points and

authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

objections, and other papers filed by the parties.  The omission to an argument, document, paper,

1    or objection is not to be construed that the undersigned did not consider the argument, document,

2    paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

3    deemed admissible, material, and appropriate for purposes of issuing these Findings and

4    Recommendations.

5            **B.  Exhaustion Under the PLRA**

6            Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

7    U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

8    correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

9    § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life."  *Porter v.*

10   *Nussle*, 534 U.S. 516, 532 (2002).  It is condition precedent to filing a civil rights claim.

11   *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

12           The PLRA recognizes no exception to the exhaustion requirement, and the court may not

13   recognize a new exception, even in "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 648

14   (2016).  The one significant qualifier is that "the remedies must indeed be 'available' to the

15   prisoner."  *Id.* at 639.  A prison's internal grievance process controls whether the grievance

16   satisfies the PLRA exhaustion requirement.  *Jones*, 549 U.S. at 218.

17           **C.  CDCR Applicable Grievance Procedures**

18           CDCR's administrative remedy process governs this action.[1]  *See* Cal. Code Regs. tit. 15,

19   § 3084.1 (2018).  At the time relevant to this action, a prisoner was required to proceed through

20   three formal levels of review, unless otherwise excused under the regulation, to exhaust available

21   remedies.  *Id.*, § 3084.5.  A prisoner initiates the exhaustion process by submitting a CDCR Form

22   602, Inmate/Parolee Appeal ("grievance").  *Id.*, §§ 3084.2(a), 3084.8(b).  The grievance must

23   "describe the specific issue under appeal and the relief requested" and "shall list all staff

24   member(s) involved and shall describe their involvement in the issue."  *Id.*, § 3084.2(a).  The

25   prisoner "shall state all facts known and available to him/her regarding the issue being appealed at

26

27   ---
     [1] The Court cites to the regulations in force at the relevant time period.  In June 2020, these regulations
28   were amended and changed the former three-step "appeal" process to a two-step process generally.  *See*
     Cal. Code Regs. tit. 15, § 3480-3487 (2022).

5

the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment."  *Id*., § 3084.2(a)(4).  If the inmate does not have information concerning the identity of the person at issue, he or she must provide any other available information that would assist the appeals coordinator in identifying who is at fault.  *Id*., § 3084.2(a)(3).

If dissatisfied with the first-level response, the prisoner must appeal to the second level. Like the first level appeal, the second level is handled by the institution.  *Id*., § 3084.2(c).  The appeal must be submitted within thirty calendar days of "[t]he occurrence of the event or decision being appealed," or "[u]pon first having knowledge of the action or decision being appealed," or "upon receiving an unsatisfactory department response to an appeal filed."  *Id*., § 3084.8(b)(1)-(3).

After the second-level response, a dissatisfied prisoner must appeal to the third level of review.  *Id*., §§ 3084.2(d), 3084.7(c), 3084.8(d).  This review is handled by CDCR's Office of Appeals.  *Id*., § 3084.2(d).  The appeal must be served by mail to the Appeals Chief, again within thirty calendar days.  *Id.* §§ 3084.2(d), 3084(b)(1)-(3).  It is this third level of review that exhausts administrative remedies.  *Id*., §§ 3084.1(b), 3084.7(d)(3).

## ANALYSIS

As previously stated, the undersigned considers the entire record and deems only those facts, which are properly supported by evidence, as true and undisputed.

### A.  Material Facts Regarding Exhaustion of Administrative Remedies

Following a thorough review of the evidence submitted, the undersigned finds these material facts are deemed undisputed, unless otherwise indicated:

- Plaintiff was a state prisoner in the custody of CDCR and incarcerated at KVSP at all times relevant to this cause of action.  (Doc. No. 19 at 6).
- Relevant to the instant motion, the operative Complaint alleges a retaliation claim against both Correctional Officer Hernandez and Warden Pfeiffer, and conditions of conferment claim as to Pfeiffer.  (Doc. No 19 at 5-6, 9; Doc. No. 23 at 7-9). Regarding Hernandez, Plaintiff's claim stems from his averment that Hernandez threatened to take action against Plaintiff for filing grievance number KVSP-0-17-

6

02306 and told him that he would "regret it" if he didn't withdraw the grievance. (Doc. No. 19 at 6, 9; Doc. No. 23 at 7-9).  Regarding Pfeiffer, that he directed a cell move to support Hernandez's threat and further directed Plaintiff be housed in Facility B in a cell that did not possess electricity due to Plaintiff's grievance filing. (Doc. No. 19 at 10; Doc. No. 23 at 7-9).

- Since August 2008, Office of Appeals (OOA) receives, reviews, and maintains all appeals not related to health care issues.  (Doc. No. 54-6 at 2, ¶2). When OOA receives an appeal, it is assigned tracking log number and entered into a computer system for each inmate.  This system can then generate an Appeal History Report including: the inmate's name, CDCR number, the appeal log number, the appeal issue, the date the appeal was received, the underlying grievance log number, the date the appeal is closed, and final disposition of the appeal.  (*Id.* at 2, ¶3).

- The programs, referred to as the "Electronic Records Management" (ERMS) and "Strategic Offender Management System" (SOMS) maintain and file each inmates' grievances.  (Doc. No. 69-2 at 2).

- KVSP utilizes a program called the Inmate Appeals Tracking System (IATS) that records all appeals filed by inmates including rejected and canceled appeals.  (Doc. No. 69-2 at 2, ¶5).

- During Plaintiff's incarceration at KVSP, he filed twenty grievances at the first or second level response. (Doc. No. 54-5 at 3, ¶12; Doc. No. 54-6 at 9-10).

- From October 1, 2017 through December 31, 2019, Plaintiff filed and received fifteen final third level determinations from the OOA.  (Doc. No. 54-6 at 3, ¶¶8, 10).

- Plaintiff did not file any inmate grievance referring by name to either Warden Pfeiffer or correctional officer Hernandez. (Doc. No. 54-5 at 5, ¶14; Doc. No. 54-6 at 3 ¶¶7-8; Doc. No. 69-2 at 2, ¶ 5).  Nor did any of Plaintiff's grievances identify the claims at issue in this lawsuit.  (Doc. No. 54-6 at 4, ¶11.).

- Plaintiff never filed a grievance regarding Plaintiff's conditions of confinement

7

claim concerning not having electricity in his cell for a prolonged time.  (Doc. No.

54-6 at 3, ¶8; *see also* Doc. No. 54-4 at 5, ¶13; *see* Doc. No. 54-6 at 3).  Instead in

Appeal Log No. 1817066 (an appeal of Grievance Log No. KVSP-18-02451),

Plaintiff alleged a member of the maintenance or plumbing staff deliberately

turned off water in his cell in Facility B on August 15, 2018. (Doc. No. 54-6 at 4,

¶9).  There is no reference to Warden Pfeiffer in this grievance and no mention of

being without electricity for a prolonged time.  (*Id.*).

- None of the other 14 third level appeals filed by Plaintiff between October 1, 2017

   and December 31, 2019 contain allegations concerning not having electricity for a

   prolonged time in retaliation for grievance filing.  (Doc. No. 54-6 at 3-4, ¶10).

**C.  Claims against Defendants Pfeiffer and Hernandez are Unexhausted**

To properly exhaust administrative remedies, Plaintiff must follow CDCR's grievance

process requiring inmates to submit an appeal through three levels of review.  The rules also

require the inmate to identify who is responsible for the alleged wrongdoing and the date of the

alleged wrongdoing.  To the extent the inmate cannot identify who is responsible, then the inmate

is supposed to include some information to identify the person in the future.

Regarding Plaintiff's claim against Defendant Pfeiffer regarding the alleged prolonged

lack of electricity, the undisputed evidence of record shows the sole living conditions grievance

Plaintiff submitted concerned a lack of water, not electricity, and did not reference Defendant

Pfeiffer.  (Doc. No. 54-4 at 3) (citing Doc. No. 54-5 at 242).  In other words, Plaintiff never

complained that Warden Pfeiffer intentionally directed that he be placed in a cell that did not have

electricity for a prolonged time.  Instead, Plaintiff submitted appeal no. KVSP-0-18-02451,

processed through the final level of review, and alleged *maintenance staff* at KVSP turned off the

water in his cell in Facility B while doing routine maintenance and failed to turn it back on.  (Doc.

No. 54-5 at 242-245).  While Plaintiff did allege the actions were deliberate and asked that

whoever was responsible be remanded, the grievance was resolved by memorandum dated

November 16, 2018.  (*Id.* at 243).  As noted in the letter sent to Plaintiff, his grievance was

"partially granted," but further determined there was no information to substantiate the water

8

1  issue was deliberate.  (*Id.* at 243).

2        Similarly**,** the undisputed evidence of record reveals none of Plaintiff's twenty non-

3  medical grievances ever mentioned Hernandez by name, much less that he threatened to retaliate

4  against Plaintiff if he continued to file grievances.  As set forth above, CDCR's exhaustion rules

5  require an inmate to identify the perpetrator of the alleged wrongdoing by name, or position, or

6  otherwise sufficiently describe them to give notice to the CDCR and in effort to resolve the claim.

7        Plaintiff in conclusory terms claims not all his grievances were filed.  Specifically,

8  Plaintiff claims he filed a grievance about Pfeiffer but alleges it was not filed, or claims Lucas

9  destroyed it.  He also claims he filed a grievance about officer Hernandez, but it was not filed, or

10  it was "canceled out."  Lucas presents a declaration, under oath, that he never destroyed any of

11  Plaintiff's grievances.  (Doc. No. 69-2).

12        The PLRA requires exhaustion unless circumstances render administrative remedies

13  otherwise "effectively unavailable."  *Sapp v. Kimbrell,* 623 F.3d 813, 822 (9th Cir. 2010)

14  (quoting *Nunez v. Duncan,* 591 F.3d 1217, 1226 (9th Cir. 2010)).  Administrative remedies are

15  effectively unavailable where an inmate attempts to exhaust his administrative remedies but is

16  "thwarted by improper screening."  *Id.* at 823.  For Plaintiff to avail himself of this exception to

17  the exhaustion requirement, he must establish that (1) he actually filed a grievance or grievances

18  that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the

19  claim that he seeks to pursue in federal court; and (2) prison officials screened his grievance or

20  grievances for reasons inconsistent with or unsupported by applicable regulations.  *Id*. at 823-24,

21  828.

22        Aside from conclusory allegations, Plaintiff presents no evidence to substantiate his

23  conclusory claims that prison official's refusal to file his grievances thwarted the process.  He

24  attaches no grievances reflecting that he grieved the claims at issue involving Defendants Pfeiffer

25  or Hernandez.  *Buckley v. Johnson*, 2019 WL 3817393 * (E.D. Cal. Aug. 14, 2019) (adopting in

26  full findings and recommendations to dismiss based on lack of exhaustion and noting a plaintiff

27  failed to provide any documentation to support contention that remedies were unavailable to

28  him).  Vague and conclusory allegations are insufficient to create a genuine dispute of material

fact.  *See Sapp*, 623 F.3d at 823-24 (plaintiff bears burden of demonstrating exception to

exhaustion requirement based on prison officials' misconduct thwarted attempts to exhaust

remedies); *Jeffries v. Fields*, 2014 WL 994908 * 18 (C.D. Cal. March 10, 2014) (stating

conclusory allegations are insufficient to demonstrate that failure to exhaust was excused by

prison officials' misconduct).  Instead, Plaintiff offers only his own self-serving statements that

his grievances were destroyed or otherwise were not filed.  This is insufficient to raise a genuine

issue of material fact.  *Rodgers v. Reynaga*, No. CV 1-06-1083-JAT, 2009 U.S. Dist. LEXIS

84840, 2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009) ("To grant Plaintiff an exception to

PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his

grievance was surreptitiously destroyed by prison officials would completely undermine the

rule."); *Avery v. Virga*, No. 2:11-cv-1945-KJM-EFP (TEMP), 2016 U.S. Dist. LEXIS 82544, at

*28 (E.D. Cal. June 24, 2016) (plaintiff's claim without further evidence that a mailroom officer

caused his grievance to be lost did not show a genuine issue of material fact as to exhaustion).

Further, Plaintiff's allegation that Lucas destroyed or intentionally lost some grievances is too

vague and conclusory that Lucas lost grievances directed against Pfeiffer and Hernandez.  And

Plaintiff does not allege as to his claim against Lucas that these are the grievances that Lucas lost

or destroyed.  "The allegation that some grievances were lost or destroyed is not sufficient to

support the inference that plaintiff's administrative remedies was wrongfully obstructed for all of

his claims, particularly when there is ample evidence that many of plaintiff's grievances were

recorded and responded to through the director's level of review."  *Crayton v. Hedgpeth*, Case

No. C-08-00621 WHA(PR), 2011 U.S. Dist. LEXIS 54165, at *21 (E.D. Cal. May 18, 2011).

Similar to *Crayton*, the record reflects Plaintiff was familiar with the CDCR exhaustion

procedures and the process was available to him considering the number of grievances Plaintiff

filed through the third level during the period at issue.  Thus, had Plaintiff filed grievances on

these claims, he certainly would have at least inquired about the status of the grievances after not

receiving a response to any of the grievances at the first level.  Because the uncontroverted

evidence demonstrates that Plaintiff did not submit a grievance concerning his claim concerning

being placed in a cell without electricity by Defendant Pfeiffer for a prolonged time and/or for

1  retaliatory reasons nor for his claim that Defendant Hernandez threatened him for filing a

2  grievance, these claims must be dismissed pursuant to the PLRA.  42 U.S.C. § 1997e(a);

3  *Woodford*, 548 U.S. at 85-86, 90.

4  **CONCLUSION**

5      Defendants satisfied their burden of proving both that administrative remedies were

6  available to Plaintiff and Plaintiff failed to fully exhaust his available administrative remedies as

7  to Plaintiff's Eighth Amendment conditions of confinement claim against Warden Pfeiffer and his

8  retaliation claims against both Pfeiffer and correctional officer Hernandez.  Plaintiff's conclusory

9  allegations that he filed grievances that went unfiled, are not supported by any evidence.  Based

10  upon the undisputed evidence, Defendants Pfeiffer and Hernandez' exhaustion based MSJ should

11  be granted.

12      Accordingly, it is **RECOMMENDED**:

13      1.  The motion for summary judgment filed on behalf of Defendants Pfeiffer and

14  Hernandez (Doc. No. 54) be GRANTED and the claims against Defendants Pfeiffer and

15  Hernandez be dismissed.

16      2.  This case proceed against Defendant Lucas only.

17  **NOTICE TO PARTIES**

18  These findings and recommendations will be submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

20  days after being served with these findings and recommendations, a party may file written

21  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

22  Findings and Recommendations."  Parties are advised that failure to file objections within the

23  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

24  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

25  Dated:    December 13, 2022

26  HELENA M. BARCH-KUCHTA
    UNITED STATES MAGISTRATE JUDGE

27

28