1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                 FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   MARLIN PENN,                          Case No.  1:18-cv-01482-KES-HBK (PC)

12              Plaintiff,                  FINDINGS AND RECOMMENDATION TO
                                            GRANT DEFENDANT'S MOTION FOR
13        v.                                SUMMARY JUDGMENT

14                                          (Doc. No. 99)

15   A. LUCAS,                              FOURTEEN-DAY OBJECTION PERIOD

16              Defendant.

17

18        Pending before the Court is Defendant A. Lucas' motion for summary judgment filed

19   November 14, 2023.  (Doc. No. 99, "MSJ").  For the reasons discussed below, the undersigned

20   recommends the district court grant Defendant's motion for summary judgment because the

21   undisputed material facts show that Lucas did not retaliate against Plaintiff.

22                              **BACKGROUND**

23        **A.  Procedural History**

24        Plaintiff Marlin Penn is a state prisoner proceeding pro se and *in forma pauperis* on his

25   Second Amended Complaint filed pursuant to 42 U.S.C. § 1983 stemming from events that

26   occurred at Kern Valley State Prison ("KVSP").  (Doc. No. 19, "SAC").  The SAC initially

27   named seven defendants, all of whom are employed by the California Department of Corrections

28   and Rehabilitation ("CDCR") at KVSP: (1) A. Lucas, appeals coordinator; (2) M. Hernandez,

correctional counselor II; (3) the warden of KVSP; (4) G. Gebremedhin, correctional counselor I; (5) Lt. Sotelo, correctional lieutenant; (6) M. Jimenez, correctional officer; and (7) T. Howard, correctional officer. (*Id*. at 2-4).  After a Findings and Recommendations, the previously assigned district judge dismissed all claims and Defendants other than Plaintiff's First Amendment retaliation claims against Defendants Hernandez and A. Lucas, and Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Pfeiffer.  (*See* Doc. Nos. 23, 25).  Thereafter, Defendants Pfeiffer and Hernandez were dismissed for Plaintiff's failure to exhaust his administrative remedies.  (Doc. Nos. 75, 80).  Thus, the SAC remains pending only against Defendant Lucas on Plaintiff's First Amendment retaliation claim.

The SAC alleges the following facts relevant to Plaintiff's retaliation claim against Defendant Lucas.  On November 24 and 29, 2017, Plaintiff was issued two rules violation reports ("RVRs"), which were classified as "serious."  (*Id*. at 5, 7).  Plaintiff filed administrative appeals[1] against various correctional officers in connection with the RVRs.  The gravamen of Plaintiff's First Amendment retaliation claim against Lucas is that Lucas deliberately lost, failed to assign log numbers to, or never processed Plaintiff's appeals concerning the RVRs or his six other appeals submitted on October 31, 2018 to protect the staff involved in the RVRs and to punish Penn for exercising his protected First Amendment rights.  (*See* Doc. No. 19 at 13-15).  Further, Plaintiff claims that Lucas issued him an "Appeal Abuse Warning" solely to chill his exercise of his First Amendment rights.  (*Id*. at 10).

**B.  The Pleadings and Record Before the Court**

Defendant Lucas filed the instant merits-based motion for summary judgment and in support submits: (1) a memorandum of points and authorities (Doc. No. 99); (2) the Declaration of C. Gonzales  (Doc. No. 99-1); (3) the Declaration of A. Leyva attaching a verified copy of Plaintiff's "Inmate/Parolee Appeals Tracking System Appeals Listing Report" (Doc. No. 99-2, Exhibit A); (4) the Declaration of A. Lucas, with Exhibits A-S (Doc. No. 99-3); (5) and Exhibits

---

[1] The Parties refer to "administrative appeals" although in other inmate actions the use of the term grievance is used.

2

T-II (Doc. No. 99-4)[2]; (5) the Declaration of Gurpreet Sandhu, counsel of record for Defendant (Doc. No. 99-5); (6) a Statement of Undisputed Facts (Doc. No. 99-6); and (7) a *Rand* warning to Plaintiff (Doc. No. 99-7).  Defendant A. Lucas contends that he is entitled to summary judgment because the record evidence indisputably shows that Lucas logged and processed all of Plaintiff's applicable appeals in accordance with Title 15 of the California Code of Regulations ("Title 15"), took all steps to ensure Penn's appeals were investigated, and never prevented Plaintiff from filing additional administrative appeals despite issuing the "Appeal Abuse Warning" consistent with Title 15.  (Doc. No. 99 at 6).  Alternatively, Lucas contends that qualified immunity bars Plaintiff's First Amendment claim because no controlling precedent would have placed a reasonable Appeals Coordinator on notice that following the regulations established by Title 15 violated the First Amendment.  (*Id.*).

In opposition, Plaintiff filed a "Statement in Dispute of Defendants [sic] Undisputed Facts for Summary Judgment" (Doc. No. 109) and a "Declaration in Opposition to Summary Judgment" (Doc. No. 110).  Plaintiff attaches Exhibits 1-13 to his Statement (Doc. No. 109 at 23-109) and Exhibits 1-9 to his Declaration (Doc. No. 110 at 6-50), including Cal. Cod. Reg. title 15, Section § 3084.9(i)(1-3).  Plaintiff asserts that Lucas' handling of his appeals was contrary to Title 15.  (Doc. No. 110 at 1).  In particular, he contends that Lucas "refuse[d] to forward (6) Staff Complaints to Hiring Authority" as required by Section 3084.9(i)(1)-(3)[3] and Lucas "submitted his own self-generated Staff Complaint in attempts to cover up this fact."  (*Id.*).  Plaintiff cites Section 3084.9(i)(3), which states that, "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority or designee within five working days."  Essentially Plaintiff contends that Lucas did not have authority under Title 15 to screen and/or reject the six appeals he filed on October 31, 2028 and labeled "Staff Complaints."  Consequently, Plaintiff's opposition asserts that "Defendant Lucas ['] failure to present Plaintiff's (6) Staff complaints to hiring authority is the sole nature of this claim . . ."  (Doc. No. 110 at 2,

---

[2] Attached to Lucas' Declaration are approximately 500 pages of exhibits.  Exhibits A and B are the pertinent sections of Title 15 that were in effect in 2018.  Exhibits C-Z, and AA-II are copies of all documents related to each of Plaintiff's appeals, including the appeals at issue.

[3] The Court notes that this provision has since been repealed.

¶7).

In reply, Lucas argues that Penn does not dispute, as evidenced by the exhibits, that (1) Lucas did forward two of his six appeals, including the one against himself; (2) Lucas was not the last appeals coordinator to screen out one of Penn's appeals; and (3) Penn failed to correct or timely resubmit his other three appeals. (Doc. No. 114 at 2). Lucas further argues that Penn cannot show that his staff appeals were exempt from the "one non-emergency appeal every 14 days" provision in Title 15 and points out Penn did not address the application of qualified immunity. (*Id*.). Defendant submits with the Reply a second Declaration from Lucas, attaching a correct copy of Cal. Code Regs. tit. 15 § 3084.5(b)(4). (Doc. No. 114-1, Exh. A).

After being granted leave of the Court, Plaintiff filed a limited Sur-Reply. (Doc. No. 116). In it, Plaintiff addresses Defendant Lucas' qualified immunity argument. (*Id*.).

## II.  APPLICABLE LAW

### A.  Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ.

4

P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion.  *Anderson*, 477 U.S. at 252.  However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Further, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."  *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611

F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still

must "identify or submit some competent evidence" to support their claims.  *Soto*, 882 F.3d at

872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment

if based on personal knowledge and specific facts admissible in evidence.  *Lopez v. Smith*, 203

F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory allegations

unsupported by specific facts, will not be sufficient to avoid summary judgment.  *Arpin v. Santa*

*Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And, where a plaintiff

fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to

have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

The undersigned has carefully reviewed and considered all arguments, points and

authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

objections, and other papers filed by the parties.  The omission to an argument, document, paper,

or objection is not to be construed that the undersigned did not consider the argument, document,

paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

deemed admissible, material, and appropriate for purposes of issuing these Findings and

Recommendations.

## B.  First Amendment Retaliation

It is clear the First Amendment guarantees a prisoner the right to file a grievance or access

the courts.  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Brodheim v. Cry*, 584 F. 3d

1262, 1269 (9th Cir. 2009).  Retaliating against an inmate for exercising this right is "prohibited

as a matter of 'clearly established law."  *Brodheim*, 584 F.3d at 1269 (citations omitted).  To state

a claim for First Amendment retaliation, a plaintiff must allege five elements: (1) he engaged in

protected activity; (2) the state actor took an adverse action against the plaintiff; (3) a causal

connection between the adverse action and the protected conduct; (4) the defendant's actions

would chill or silence a person of ordinary fitness from protected activities; and (5) the retaliatory

action did not advance a legitimate correctional goal. *Chavez v. Robinson*, 12 F.4th 978, 1001

(9th Cir. 2021) (quoting *Rhodes*, 408 F.3d at 567–68).  To raise a triable issue, a plaintiff must

come forward with "either direct evidence of retaliatory motive or at least one of the three general

types of circumstantial evidence"— (1) proximity in time between the protected speech and the alleged retaliatory act; (2) expressed opposition; or (3) other evidence that the reasons proffered for the adverse action are false or pretextual. *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002); see also *Bruce v. Ylst*, 351 F.3d 1283, 1288–89 (9th Cir.2003); *McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).  Mere speculation that a defendant acted out of retaliation is not sufficient. *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014) (citing cases).

### III.  ANALYSIS

#### A. Undisputed Material Facts

Defendant provides a statement of undisputed facts.  (Doc. No. 99-6).  Each listed fact cites to documents in the record, including sworn declarations, attached exhibits, and the Second Amended Complaint.  (*See generally* Doc. No. 99-6).  Plaintiff disputes many of Defendant's undisputed facts, however, in most instances he does not comply with the requirement that he "includ[e] with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  Local Rule 260(b) (E.D. Cal. 2023).  In those instances, and those where Plaintiff's citations do not support the denial, the Court deems Defendant's facts undisputed.  Having reviewed the record, the sworn declarations and exhibits attached thereto, the undersigned finds the following facts to be material and undisputed, unless otherwise noted.

- At all times relevant to the claims in the SAC, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at Kern Valley State Prison ("KVSP").  (Doc. No. 19).

- Plaintiff filed a Second Amended Complaint ("SAC") on May 18, 2020.  (*Id.*).

- The SAC brings a retaliation claim against Defendant A. Lucas alleging he personally "addressed each RVR appeal filed" by Plaintiff and refused to file any of Plaintiff's staff complaints.[4]  (*Id.* at 10:2-3.)

---

[4] In his Statement in Dispute of Defendants Undisputed Facts, Plaintiff revises his statement in the SAC, stating, "Plaintiff alleges that A. Lucas handled and or reviewed *most* appeals while he was housed at

- The SAC avers that "all Plaintiff's claims were . . . deliberately circumvented and denied proper processing by A. Lucas.  Appeals and Staff Complaints were lost, not filed, improperly filed and some not returned by [Defendant]."  (*Id*. at 13).

- The SAC states that on October 31, 2018, Plaintiff submitted six staff complaints "that had not been accepted by A. Lucas."  The SAC also alleges that Defendant issued an "Appeal Abuse Warning" "thus circumventing [his] appeal rights."  (*Id*. at 10:8-16).

- Defendant Lucas worked as the Appeals Coordinator at KVSP between June 2017 and February 2019.  (Doc. No. 99-3 at 1 ¶ 2).

- Lucas' duties included in-taking inmates' appeals, timely reviewing and processing them consistent with procedures, and drafting a response.  (Doc. No. 99-3 at 2 ¶ 5).

- The California Code of Regulations, Title 15-Crime Prevention and Corrections, sets forth the regulations that dictate an inmate's appeal process.  (Doc. No. 99-3 at 3 ¶ 19).

- Between 2017 and 2019, inmates at KVSP were required to begin the appeals process by filling out a form called a CDCR 602 "Inmate/Parolee Appeal."  (Doc. No. 99-3 at 2 ¶ 8); (Doc. No. 99-1 at 2 ¶ 4).

- Once an appeal is received, prison officials process it and assign it a log number. (Doc. No. 99-3 at 2 ¶ 9); (Doc. No. 99-1 at 2 ¶ 5).

- The assignment of a log number indicates that the inmate's appeal has been successfully submitted and has been reviewed.  (Doc. No. 99-3 at 2 ¶¶ 9-10); (Doc. No. 99-1 at 2 ¶¶ 5-6).

- The Appeals Coordinator reviews the appeal and, if it fails to comply with relevant Title 15, issues a screening response called a "CDC Form 695."  (Doc. No. 99-3 at 2 ¶ 10); (Doc. No. 99-1 at 2 ¶ 6).

---

KVSP, and refused to file any of his Staff Complaints."  (Doc. No. 109 at 6) (emphasis added).  The Court does not find the distinction material to the issues before the Court.

- A screening response will include the log number assigned to the appeal, a summary of the issues identified and applicable regulations, and instructions on how to correct an appeal if it is rejected pursuant to Title 15 Section 3084.6(b).[5] Screening occurs at each level to ensure the appeal complies with applicable regulations.  (*Id*.).

- The inmate has 30 days from the date of each rejection to return a corrected appeal pursuant to CCR 3084.6(c)(10).  (Doc. No. 99-3 at 2 ¶ 11); (Doc. No. 99-1 at 2 ¶ 7).

- If, upon return of the appeal, the Appeals Coordinator determines that the required corrections were not made, he issues another screening response.  The response again identifies the issues with the appeal, the applicable regulations, and instructions on how to correct the appeal for further processing.  (Doc. No. 99-3 at 2 ¶ 12); (Doc. No. 99-1 at 2 ¶ 8).

- If the appeal passes through screening, a memorandum is issued that summarizes what the appeal issue is, what investigation was conducted, what the applicable regulations are, what the outcome is, and what remedy—if any—is granted.  (Doc. No. 99-3 at 3 ¶ 13); (Doc. No. 99-1 at 2 ¶ 9).

- Most appeals must go through three levels of review and receive a substantive response at each level to complete the exhaustion process.  Certain types of appeals, however, can "bypass" the first level of review and the first substantive response will come at the second level.  (Doc. No. 99-3 at 3 ¶ 14); (Doc. No. 99-1 at 2 ¶ 10).

- If, upon receiving a substantive response from the first level of review, the inmate is dissatisfied with the relief he received, he may submit the appeal for a second-level review.  Like the first level, appeals submitted for second-level review must comply with certain requirements set forth in Title 15; and, if they fail to comply,

---

[5] For purposes of these Findings and Recommendations, all citations refer to the version of the regulations which were effective at the time relevant to Plaintiff's claims.

the appeal might be rejected or cancelled, and not responded to substantively. (*Id.*).

- If the inmate is not satisfied with the outcome of the second-level review, he may further appeal the decision by requesting a third-level review, which is performed by the CDCR Office of Appeals in Sacramento.  (Doc. No. 99-3 at 3 ¶ 15); (Doc. No. 99-1 at 3 ¶ 11).

- Provided the inmate has complied with the applicable Title 15 regulations governing third-level review submissions, the Office of Appeals will review the appeal and issue a "Third Level Appeal Decision" that summarizes the appellant's arguments, the Second Level Response, the investigation conducted, and the reasoning behind the decision.  (Doc. No. 99-3 at 3 ¶ 16); (Doc. No. 99-1 at 3 ¶ 12).

- A Third Level Appeal Decision exhausts the inmate's administrative remedies. The inmate can seek further relief only by filing a civil lawsuit.  (Doc. No. 99-3 at 3 ¶ 17); (Doc. No. 99-1 at 3 ¶ 13).

- Appeal Coordinators from the Appeals Office at KVSP do not work for the Office of Appeals and have no say over which Office of Appeals staff member will investigate or draft the Third Level Appeal Decisions.  (Doc. No. 99-3 at 3 ¶ 18); (Doc. No. 99-1 at 3 ¶ 14).

- As of 2018, Title 15 Section 3084.4(a)(1) stated that inmates were limited to submitting one non-emergency appeal every 14 calendar days.  An "emergency appeal" is one that involves "emergency circumstances."  (Doc. No. 99-3 at 4 ¶ 20-21, Exhibit A); (Doc. No. 99-1 at 3 ¶ 18[6]).

- Title 15 Section 3084.9(a)(1) defined "emergency circumstances" to include "(a) threat of death or injury due to enemies or other placement concerns, (b) serious

---

[6] The paragraphs in the Declaration of C. Gonzales are misnumbered after paragraph 16.  Specifically, paragraph 16 is followed by paragraphs 1, 2, 3, and so on.  In the interest of clarity, the Court refers to misnumbered paragraphs by their correct sequential numbers, i.e. "paragraph 1"as "paragraph 17," et seq.

and imminent threat to health or safety."  (Doc. No. 99-3 at 4 ¶ 22, Exhibit B); (Doc. No. 99-1 at 3 ¶ 19).

- Appeals making allegations against staff that do not meet the requirements of Title 15 Section 3084.9(a)(1) are not treated as "emergency appeals."  (Doc. No. 99-1 at 3 ¶ 20.).

- On November 24, 2017, Correctional Officer M. Jimenez reported that he was conducting a cleanliness inspection on Plaintiff's cell. After seeing that the cell was dirty and that Penn kept up window coverings in violation of the facility's regulations, the Officer gave Penn a direct order to take the window, vent, light covering, clotheslines, and privacy curtains down.  The order was not followed. As a result, Plaintiff was issued Rule Violation Report Log No. 03844635 ("the Nov. 24 RVR") charging him with disobeying an order.  After a hearing and investigation, Penn was found guilty of the RVR.  (Doc. No. 99-5 at 2 ¶ 6, Exhibit D).[7]

- On November 29, 2017, Correctional Officer Howard reported that she conducted a security check on Penn's cell, found that the back window coverings were not taken down, and gave an order to take down the coverings which was not followed.  This resulted in the issuance of Rule Violation Report Log No. 03817428 ("the Nov. 29 RVR") for disobeying an order.  After a hearing and investigation, Penn was found guilty of the RVR.  (*Id.* ¶ 7, Exhibit E).[8]

- Plaintiff submitted an appeal on January 12, 2018, which was processed and assigned Log No. KVSP-O-18-00130.  The appeal made several allegations relating to the Nov. 24 RVR, including alleging that the Senior Hearing Officer disregarded Plaintiff's contention that he was provided an "unreadable RVR," that he was not allowed to ask relevant questions to the Reporting Employee, that a

---

[7] Plaintiff disputes the validity of this RVR, but this dispute is not material to whether Plaintiff's SAC states a First Amendment retaliation claim against Defendant Lucas.

[8] Again, Plaintiff disputes the validity of this RVR, but this is not material to whether the SAC states a First Amendment retaliation claim against Defendant Lucas.

false report was accepted as evidence, that he was not allowed to call witnesses, and that prior to the hearing he was told that he would be found guilty regardless of the officer's statements.  (Doc. No. 99-3 at 6 ¶ 40; 67-68).

- Lucas screened Appeal Log No. KVSP-O-18-00130 at the first level and rejected it because Plaintiff presented multiple issues that could not reasonably be addressed in a single response.  (*Id*. at 6-7 ¶ 41, 66).

- Plaintiff returned the appeal to the Appeals Office and clarified that he wanted his appeal (Log No. KVSP-O-18-00130) to address only "due process violation resulting from the adjudication of an RVR."  The appeal was reviewed, and a Second Level Review response was issued on March 5, 2018.  The Second Level Review response did not dismiss the RVR but ordered a re-hearing.  (*Id*. at 7 ¶¶ 42-44; 64-65).

- Plaintiff did not request a Third Level Review.[9]  (*Id*. at 7 ¶¶ 44-45).

- On April 19, 2018, Plaintiff submitted his second appeal related to the Nov. 24 RVR.  The appeal was assigned Log No. KVSP-O-18-01035.  (Doc. No. 99-3 at 10 ¶¶ 67-68; 133-34.)

- Appeal Log No. KVSP-O-18-01035 made several allegations relating to the Nov. 24 RVR. (Doc. No. 99-3 at 10 ¶ 68; 129-32).

- Lucas screened the appeal at the first level and rejected it because it listed multiple issues that could not reasonably be addressed in a single response.  (Doc. No. 99-3 at 10 ¶ 69; 133-34).

- A Second Level Response was issued which denied the appeal.  Plaintiff did not appeal the Second Level Response.  (Doc. No. 99-3 at 11 ¶¶ 71-73, 126-28).

---

[9] Plaintiff contends that he "filed this appeal to the Third Level but did not receive a response." (Doc. No. 109 at 11).  However, Plaintiff does not cite to any document in the record to support his denial, thus the fact is deemed undisputed.  *See* Fed. R. Civ. P. 56(e)(2) (If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed.).

- On January 12, 2018, Plaintiff submitted an appeal alleging several issues relating to the Nov. 29 RVR.  The appeal was reviewed and assigned Log No. KVSP-O-18-00250. (Doc. No. 99-3 at 7 ¶¶ 46-47; 86-88).

- This appeal (Log No. KVSP-O-18-00250) asked, among other things, to ensure that Officer Howard worked on November 29, 2017 in building section A7, to have Senior Hearing Officer Contreras investigated to determine who was called during the hearing for the Nov. 29 RVR, and to review questions not asked on page 2 of the initial RVR.  (*Id.*).

- A Second Level Review was issued on March 2, 2018.  After the appeal was referred to the hiring authorities, they determined that some allegations amounted to alleged staff misconduct.  Thus, the appeal was bifurcated and appeal No. KVSP-O-18-00527 was to address the staff complaint allegations only.  The Second Level Review denied Plaintiff's appeal on the remaining issues and Plaintiff did not seek Third Level Review.  (Doc. No. 99-3 at 7 ¶¶ 48-49; 81-85).

- Appeal No. KVSP-O-18-00527 contained due process allegations against Officer Contreras, requested reversal of the Nov. 29 RVR, and sought confirmation that Officer Howard worked on November 29, 2017.  (Doc. No. 99-3 at 20 ¶¶ 113-114; Doc. No. 99-4 at 11-14).

- On March 26, 2018, the hiring authorities conducted a review of the staff complaint and found that staff did not violate CDCR policy.  Plaintiff did not seek Third Leave Review of this decision.  (Doc. No. 99-3 at 20 ¶¶ 114-116); (Doc. No. 99-4 at 8-10).

- On February 18, 2018, Penn wrote another appeal (No. KVSP-O-18-00450) making several allegations and asking again for the Nov. 29 RVR to be reversed. (Doc. No. 99-3 at 8 ¶¶ 53-54; 107-10).

- The appeal (No. KVSP-O-18-00450) was rejected at the first level by C. Gonzales because it was submitted outside allowable time constraints.  (Doc. No. 99-3 at 8-9 ¶ 55; 106).

13

- Plaintiff returned the appeal with a note stating he "original[ly] filed [this appeal] on 1/13/18 and [your] office either lost or refused to file it until now."  (Doc. No. 99-3 at 9, ¶ 56).

- Lucas then screened the appeal again on February 27, and reminded Plaintiff that per regulation he could not return the appeal because C. Gonzales cancelled it, but that Plaintiff could appeal the cancellation.  Plaintiff was also asked to explain how this appeal was not duplicative of Log No. KVSP-O-18-004130 and advised that this appeal was an abuse of the appeals process and that restrictions may be imposed pursuant to Tile 15 if he continued to abuse the appeals process.  (Doc. No. 99-3 at 9 ¶¶ 57; 58).

- On February 28, 2018, Plaintiff submitted another appeal, which asserted that his January 13, 2018 appeal was "not filed and not returned," and asking that appeal No. KVSP-O-18-00450 be filed and for a staff complaint to be filed against Officer Jimenez.  (Doc. No. 99-3 at 9 ¶¶ 59-60; 116-18).  This appeal was processed and assigned Log No. KVSP-O-18-00550.

- Lucas was not involved in this appeal (Log No. KVSP-O-18-00550).  The appeal passed through screening and the Appeals Office issued a Second Level Response on March 30, 2018, which found that appeal No. KVSP-O-18-00450 was appropriately cancelled, and that the Nov. 29 RVR did not involve C/O Jimenez at any point, but that Plaintiff was free to file an appeal if he desired.  Plaintiff was also informed how to obtain a receipt for his appeals.  (Doc. No. 99-3 at 9 ¶¶ 60-66; 112-15).

- On October 31, 2018, the Appeals Office received six appeals submitted by Plaintiff, which it assigned the following log numbers: KVSP-O-18-03301, KVSP-O-18-03302, KVSP-O-18-03303, KVSP-O-18-03304, KVSP-O-18-03305, and KVSP-O-18-03306.  (Doc. No. 99-3 at 12 ¶ 83); (Doc. No. 99-1 at 3 ¶ 17).

- None of the six appeals were emergency appeals.  (Doc. No. 99-3 at 12 ¶¶ 83, 13-18 ¶¶ 92-97, 193); (Doc. No. 99-1 at 3-4 ¶¶ 17-22).

14

- On October 31, 2018, Lucas issued Plaintiff an "Appeal Abuse Warning" that explained that the filing of six appeals on the same day is "deemed misuse or abuse of the appeals process and may lead to appeal restriction" consistent with CCR Section 3084.4. The Warning explained that, unless an inmate or parolee is submitting an emergency appeal, the inmate or parolee is limited to one non-emergency appeal within a 14-day calendar day period. (Doc. No. 99-3 at 12 ¶ 90; 193).

- Lucas further warned Plaintiff that if he continued disregarding the regulations, he may be restricted from the appeals process. No disciplinary action was taken, and Plaintiff was not precluded from re-submitting the appeals in a timely manner. (Doc. No. 99-3 at 12-13 ¶¶ 90-91, 193); (Doc. No. 99-1 at 4 ¶¶ 22-24).

- Appeal No. KVSP-O-18-03301 alleged that Plaintiff's January 13, 2018 appeal was not screened or assigned, and that Officer Jimenez made false statements in relation to the Nov. 24 RVR. (Doc. No. 99-3 at 13-14 ¶ 92; 159-60); (Doc. No. 99-1 at 4-5 ¶¶ 26-31).

- Defendant screened Appeal No. KVSP-O-18-03301 at the first level and rejected it on October 31 because Plaintiff exceeded the allowable number of appeals; Plaintiff resubmitted the appeal and Defendant again screened it on November 6, 2018, rejecting it a second time because Plaintiff again exceeded the allowable number of appeals and was told not to return the appeal until after November 14, 2018. The response also directed Plaintiff to explain how the appeal was not duplicative of No. KVSP-O-18-00130. (Doc. No. 99-3 at 13 ¶ 92 (c), (d); 157); (Doc. No. 99-1 at 4-5 ¶¶ 26-31).

- After Plaintiff submitted Appeal No. KVSP-O-18-03301 a third time, Lucas cancelled the appeal on November 26, 2018, because Plaintiff submitted it outside prescribed time constraints. Despite being cancelled, Defendant nevertheless referred it to the hiring authorities. (Doc. No. 99-3 at 13-14 ¶ 92 (e), (f); 158); (Doc. No. 99-1 at 5 ¶ 30).

15

- Plaintiff resubmitted appeal No. KVSP-O-18-03301, which was screened out on December 4, 2018.  Plaintiff was reminded that he could not return a cancelled appeal but could appeal the cancellation.  (Doc. No. 99-3 at 14 ¶ 92 (e), (f); 157); (Doc. No. 99-1 at 5 ¶ 31).[10]

- Plaintiff submitted an appeal on December 5, 2018, which was assigned Log No. KVSP-O-18-03808.  The appeal passed screening and a Second Level Response was issued, which found that appeal No. KVSP-O-18-03301 was appropriately cancelled.  Plaintiff did not appeal this decision.  (Doc. No. 99-3 at 18-19 ¶¶ 99-102; 224-26).

- Appeal No. KVSP-O-18-03302 alleged that Lucas misclassified RVRs and "threw away" numerous staff complaints.  (Doc. No. 99-3 at 14-15 ¶ 93 (a), (f), Exh. L; (Doc. No. 99-1 at 5 ¶ 32).

- Plaintiff received a staff complaint response and a Third Level Review response, both of which denied this appeal (No. KVSP-O-18-03302).  (Doc. No. 99-3 at 14-15 ¶ 93 (e), (f); 169-72); (Doc. No. 99-1 at 5 ¶ 32).

- Appeal No. KVSP-O-18-03303 made several allegations against Officer Sotelo in relation to RVR No. 4978137.  (Doc. No. 99-3 at 15 ¶ 94; 194-95); (Doc. No. 99-1 at 5 ¶ 36).

- Defendant screened this appeal (No. KVSP-O-18-03303) and rejected it on October 31 because Plaintiff exceeded the allowable number of appeals; Plaintiff resubmitted the appeal and Defendant again screened it on November 6, 2018, rejecting it a second time because Plaintiff again exceeded the allowable number of appeals and was told not to return the appeal until after November 14, 2018. Plaintiff was also asked to explain why he did not violate time constraints given

---

[10] Plaintiff marks many of the facts concerning Lucas' handling of the six appeals filed on October 31, 2018 "disputed," however he does not appear to dispute the facts themselves.  Rather, he contends that Lucas failed to follow the proper procedure prescribed by Title 15 for handling of staff complaints and asserts that Lucas was not authorized to "screen, reject, or respond" to his filings.  (Doc. No. 109 at 15).

how his appeal relates to an incident that occurred on May 4, 2018.  (Doc. No. 99-3 at 15 ¶ 94 (c), (d); 191-92); (Doc. No. 99-1 ¶¶ 38-40).

- Appeal No. KVSP-O-18-03304 alleged that Lucas "refused to file" Plaintiff's January 13, 2018 appeal and made other allegations against staff members in relation to the Nov. 29 RVR. (Doc. No. 99-3 15-16 ¶ 95; 199-201); (Doc. No. 99-1 at 6 ¶¶ 41-45).

- Defendant screened the appeal and rejected it on October 31 because Plaintiff exceeded the allowable number of appeals; Plaintiff resubmitted the appeal and Defendant again screened it on November 6, 2018, rejecting it a second time because Plaintiff again exceeded the allowable number of appeals and was told not to return the appeal until after November 14, 2018.   (Doc. No. 99-3 at 16 ¶ 95 (c), (d); 203-04; (Doc. No. 99-1 at 6 ¶¶ 41-45).

- The appeal was screened again on November 19, 2018, by C. Gonzales, who rejected it and asked Plaintiff to explain how the appeal was different from No. KVSP-O-18-00250 and KVSP-O-18-00527, and how the appeal did not violate time constraints.  (Doc. No. 99-3 at 16 ¶ 95 (e); 198); (Doc. No. 99-1 at 6 ¶¶ 41-45).

- Plaintiff untimely returned his appeal on January 11, 2019 (more than 30 days from the prior rejection), and the appeal was therefore cancelled.  (Doc. No. 99-3 at 16 ¶ 95 (g); 197-98); (Doc. No. 99-1 at 6 ¶¶ 41-45).

- Plaintiff appealed the cancellation of No. KVSP-O-18-03304 by submitting another appeal, which was assigned Log No. KVSP-O-19-00243.  Appeal No. KVSP-O-19-00243 was rejected on January 22, 2019, because Plaintiff had exceeded the allowable number of appeals.  (Doc. No. 99-3 at 19 ¶¶ 103-105; 243-46).

- Appeal Log No. KVSP-O-18-03305 alleged that staff failed to return Plaintiff his property.  (Doc. No. 99-3 at 16-17 ¶¶ 96; 209-11; (Doc. No. 99-1 at 6-7 ¶¶ 46-50).

- Defendant screened the appeal and rejected it on October 31 because Plaintiff exceeded the allowable number of appeals; Plaintiff resubmitted the appeal and Defendant again screened it on November 6, 2018, rejecting it a second time because Plaintiff again exceeded the allowable number of appeals and was told not to return the appeal until after November 14, 2018.  Penn did not return the appeal after November 14, 2018.  (Doc. No. 99-3 at 16-17 ¶¶ 96; 206-07); (Doc. No. 99-1 at 6-7 ¶¶ 46-50).

- Appeal Log No. KVSP-O-18-03306 requested that Plaintiff's Level III override[11] be re-instated. (Doc. No. 99-3 at 17 ¶¶ 97; 217-18); (Doc. No. 99-1 at 7 ¶¶ 51-56).

- Defendant screened the appeal and rejected it on October 31 because Plaintiff exceeded the allowable number of appeals; Plaintiff resubmitted the appeal and Defendant again screened it on November 6, 2018, rejecting it a second time because Plaintiff again exceeded the allowable number of appeals and was told not to return the appeal until after November 14, 2018.  (Doc. No. 99-3 at 17 ¶¶ 97, 215-16); (Doc. No. 99-1 at 7 ¶¶ 51-56).

- The appeal was screened a third time by C. Gonzales, who rejected it because it listed multiple issues that did not derive from a single event and could not reasonably be addressed in a single response.  Plaintiff did not return the appeal again.  (Doc. No. 99-3 at 17 ¶¶ 97; 213); (Doc. No. 99-1 at 7 ¶¶ 51-56).

- Between 2017 and 2019, Plaintiff submitted at least 18 other appeals (Nos. KVSP-O-17-02306, KVSP-O-17-03386, KVSP-O-18-02011, KVSP-O-17-03223, KVSP-O-17-02470, KVSP-O-18-00527, KVSP-O-18-00565, KVSP-O-18-01196, KVSP-O-18-01372, KVSP-O-18-01390, KVSP-O-18-01523, KVSP-O-18-01725, KVSP-O-18-01776, KVSP-O-18-01930, KVSP-O-18-02199, KVSP-O-18-02451, KVSP-O-18-03431, KVSP-O-19-00721, KVSP-O-19-01680), all of which were assigned

---

[11] Plaintiff had previously been allowed to stay in a Level III facility, even though his case factors indicated he should be in a prison with a higher security level.  He eventually had that privilege rescinded and wanted it restored.

18

log numbers and processed according to the applicable regulations.  (Doc. No. 99-3 ¶¶ 24-32, 33-38, 74-81, 106-109, 113-117, 118-120, 121-125, 126-129, 130-134, 135-137, 138-143, 144-146, 147-150, 151-156, 157-160, 164-165; Exhs. C, D, J, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG); (Doc. No. 99-2 at 4-6).

• Plaintiff could not produce any documents supporting his claim for punitive damages.  (Doc. No. 99-5 at 4-7).

• Plaintiff admitted that at least one of the six appeals he submitted on October 31, 2018 was not an emergency appeal.  (*Id*. at 64:13-19).

• From August 25, 2017 through May 17, 2019 Plaintiff submitted 35 separate appeals while housed at KVSP.  (Doc. No. 99-2 at 1, ¶ 2, Exh. A).

**B.  The Undisputed Facts Show Lucas Did Not Retaliate Against Plaintiff**

The undersigned first must consider whether Defendant, as the moving party, has met his initial burden of showing *prima facie* entitlement to summary judgment on the issue of Plaintiff's retaliation claim.  *Celotex Corp.*, 477 U.S at 323.

**1.  Protected Activity**

It is undisputed that filing prison grievances is a protected First Amendment activity.  *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  It is also undisputed that Plaintiff filed grievances challenging both his November 24, 2017 and November 29, 2017 RVRs, as well as the six October 31, 2018 appeals, in addition to numerous other appeals against KVSP prison staff.  Thus, this Court finds Plaintiff satisfies the first element that he was engaged in protected conduct.

**2.  Adverse Action**

This Court finds Plaintiff's claim fails at the second step because he cannot show adverse action.  Significantly, Plaintiff's SAC alleges as the adverse action that Lucas "circumvented" and failed to process Plaintiff's appeals and failed to file his six staff complaints.  The record establishes that contrary to Plaintiff's allegations, his January 12, 2018 appeal concerning the November 24 RVR (Log No. 03844635) was assigned Appeal No. KVSP-O-18-00130, was screened by Lucas, granted in part at the Second Level, that a rehearing on the November 24,

1   RVR was ordered, and Plaintiff did not file a Third Level Appeal.  (Doc. No. 99-3 at 55-79, Exh.

2   E); (Doc. No. 99-2 at 4).  Similarly, Plaintiff's January 12, 2018 appeal concerning the November

3   29, 2017 RVR (Log No. 03817428) was assigned Appeal No. KVSP-O-18-00250 and Lucas

4   referred it to Hiring Authorities and it was denied at the Second Level of review.  (Doc. No. 99-3

5   at 80-103, Exh. F); (Doc. No. 99-2 at 4).  Thus, the record demonstrates both of Plaintiff's

6   appeals concerning his RVRs were processed by Lucas.

7          Regarding the six non-emergency appeals filed on October 31, 2018 that Plaintiff insists

8   were Staff Complaints, each of the appeals was logged, screened, processed, and responded to

9   and Plaintiff was able, and did in most cases, resubmit appeals.  (*See* Appeal Nos. KVSP-O-18-

10  03301, KVSP-O-18-03302, KVSP-O-18-03303, KVSP-O-18-03304, KVSP-O-18-03305, and

11  KVSP-O-18-03306, Doc. Nos. 99-3 at 156-222, Exhs. K-P).  Specifically, in addition to rejecting

12  each of the appeals under the 14-day rule, each response and/or subsequent response advised

13  Plaintiff of additional issues that should be addressed on resubmittal, such as: why the appeal was

14  not untimely, not duplicative of earlier appeals, or that it improperly contained multiple issues in

15  one appeal.  (*Id.*).  Lucas also advised Plaintiff of his option of resubmitting the appeal within

16  thirty (30) days of the rejection.  (*Id.*).  Moreover, the undisputed evidence reveals that two of the

17  appeals were eventually referred as Staff Complaints (including the appeal lodged against Lucas)

18  upon resubmittal and forwarded to the Hiring Authority.  (Appeal No. KVSP-O-18-03301,[12] Doc.

19  No. 99-3 at 156-165, Exh. K; Appeal No. KVSP-O-18-03302, Doc. No. 99-3 at 167-189, Exh. L).

20  Because Plaintiff presents no evidence that any appeal was "lost" or "not processed" the Court

21  finds Plaintiff cannot show an adverse action.

22          Plaintiff suggests that Lucas did not possess the authority to screen the appeals since he

23  labeled the appeals as "Staff Complaints."  (Doc. No. 109 at 3).  Plaintiff cites a provision of Title

24  15 stating that "appeals alleging staff misconduct will be presented by the appeals coordinator to

25  the hiring authority or designee within five working days . . ."  15 Cal. Code Regs. § 3084.9(i)(3).

26

27  ──────────────
    [12] Although cancelled, Lucas also referred this appeal to the Hiring Authority. (*See* Doc. No. 99-3 at 158,
    stating "This appeal has been CANCELLED due to a violation of time constraints.  However, due to the
28  nature of the appeal issue it has been referred to the hiring authority for an inquiry into staff misconduct.").

20

1    Thus, the question before the Court is whether Lucas, as the Appeals Coordinator, could properly

2    reject Plaintiff's appeals labeled "Staff Complaint" at the screening stage under the governing

3    California regulations.  The Court finds he could.

4         The regulations make clear that "[a] staff complaint filed by an inmate or parolee **shall be**

5    **processed as an appeal** pursuant to this Article . . . ." *id*., § 3084.9(i) (emphasis added) and that

6    "[a]n inmate or parolee alleging staff misconduct by a departmental employee shall forward the

7    appeal to the appeals coordinator."  *Id*., § 3084.9(i)(1).  Unequivocally, Title 15 requires a

8    screening of all appeals.[13]

9
10              Screening and Managing Appeals. The appeals coordinator or a
                delegated staff member under the direct oversight of the coordinator
                shall screen **all** appeals prior to acceptance and assignment for
11              review.

12   15 Cal. Code Regs. §§ 3084.5(b) (emphasis added).  Each of Plaintiff's six appeals that were all

13   lodged on the same day were initially rejected by Lucas because none of the appeals qualified as

14   an emergency appeal and Plaintiff exceeded the allowable number of appeals filed in 14 calendar

15   days.  The regulations in effect at the pertinent time identified sixteen different reasons an appeal

16   may be rejected.  *See generally Id*., § 3084.6(b)(1)-(16).  These reasons included that "the inmate

17   or parolee has exceeded the allowable number of appeals filed in a 14 calendar day period" unless

18   the grievance is an emergency.  *Id*., § 3084(b)(3).  Thus, after Lucas determined that none of the

19   six appeals was an emergency, his initial rejection of six appeals was proper under the

20   regulations.  *See Ortega v. Ruggiero*, 2013 WL 268905 (E.D. Ca. Jan. 23, 2013) (finding proper

21   the appeals coordinator's rejection of inmate's staff complaint under regulations for failing to

22   submit supporting documents.)  Alternatively, the Court finds that Plaintiff's newly raised claim

23   that Lucas subjected him to adverse action in the processing of his grievances because of Lucas'

24   "failure to present Plaintiff's (6) Staff Complaints to hiring authority," which Plaintiff asserts

25   Lucas was required to do by Section 3084.9(i)-(iii), similarly fails.  (Doc. No. 110 at 2).

26        Further, putting aside whether Plaintiff's interpretation of Title 15 is correct, the rejection

27
28   ---
     [13] Without screening, an inmate could merely mislabel any appeal as a Staff Complaint to automatically
     avoid being subject to any of the 16 reasons specified as a basis for rejection.

1  or failure to properly process a grievance, standing alone, is de minimis action and insufficient to

2  establish a claim of First Amendment retaliation.  *See, e.g., Wright v. Shannon*, 2010 WL 445203

3  at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his

4  inmate appeals failed to state a cognizable claim under the First Amendment); *Burgos v. Canino*,

5  641 F. Supp. 2d 443, 454 (E.D. Pa.) (finding that the rejection or denial of prison grievances does

6  not constitute adverse action for purposes of a retaliation claim), aff'd, 358 Fed. App'x 302 (3d

7  Cir. 2009).  Thus, even if Defendant Lucas failed to properly process Plaintiff's appeals as staff

8  complaints by not directly forwarding them to the hiring authority without screening, this does

9  not amount to a constitutional violation because Plaintiff has no constitutional entitlement to a

10  particular grievance process.  Indeed, there is no federal constitutional liberty interest in

11  compliance with state prison regulations.  *Solomon v. Felker*, 2013 WL 5375538, at *12 (E.D.

12  Cal. Sept. 24, 2013) ("Plaintiff's allegation that the defendants failed to adhere to the prison's

13  own institutional policies and procedures does not, by itself" give rise to a constitutional

14  violation); *Sandin v. Conner*, 515 U.S. 472, 481–82, (1995) (recognizing prison regulations are

15  "primarily designed to guide correctional officials in the administration of a prison" and are "not

16  designed to confer rights on inmates"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir.

17  1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional

18  violation."); *see also Armstrong v. Warden of USP Atwater*, 2011 WL 2553266, at *8 (E.D. Cal.

19  June 24, 2011) (citing same).  Thus, even if Plaintiff can show that Lucas erred in improperly

20  screening and rejecting his appeals labeled "Staff Complaint" he cannot fulfill the other elements.

21                    **3. Retaliatory Motive**

22          A retaliatory motive may be shown by the timing of the allegedly retaliatory act or other

23  circumstantial evidence, as well as direct evidence.  *Bruce*, 351 F.3d at 1288–89; *McCollum*, 647

24  F.3d at 882.  Mere speculation that a defendant acted out of retaliation is not sufficient, however.

25  *Wood,* 753 F.3d at 905.  Here, Plaintiff does not set forth any facts to support his claim that

26  Defendant Lucas' actions in handling his grievances were driven by a retaliatory motive.  The

27  SAC asserts that "Lucas' decisions were very bias[ed] & prejudicial [,] geared to protect staff &

28  not address my due process."  (Doc. No. 19 at 10).  Beyond these conclusory assertions, however,

1   Lucas cites to no direct or circumstantial evidence to suggest that Lucas was doing anything other

2   than his job as the Appeal Coordinator at KVSP.  Lucas accepted each of Plaintiff's appeals,

3   reviewed and processed them according to procedures, and drafted a response consistent with

4   Title 15.  Again, while Plaintiff contends that Defendant's failure to construe the six appeals as

5   Staff Complaints and forward them to the Hiring Authority was contrary to Title 15, the

6   regulations at issue are sufficiently ambiguous to support Defendant's interpretation that he was

7   required to screen Staff Complaints for compliance with Title 15.  *See Exmundo v. Vella*, 2012

8   WL 465766 (E.D. Cal. Feb. 13, 2012) (where plaintiff alleged an appeals coordinator improperly

9   rejected his staff complaint as untimely court upheld the rejection as within the appeals

10  coordinator's authority).  Nor does Plaintiff's Opposition to Defendant's MSJ point to any facts in

11  the record providing evidence of retaliatory intent.  Lucas processed numerous appeals both

12  before and after the October 30, 2018 date submitted by Plaintiff.  Accordingly, Plaintiff fails to

13  establish the third element of a retaliation claim.

14              **4. Chilling Effect**

15          To state a cognizable retaliation claim, a plaintiff must allege either a chilling effect on

16  future First Amendment activities, or that he suffered some other harm that is "more than

17  minimal."  *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012).  Here, even if Defendant

18  Lucas impeded one or more of Plaintiff's appeals, which the Court has not found, there is no

19  evidence to indicate Lucas' conduct had any chilling effect on Plaintiff's First Amendment rights.

20          First, Plaintiff was never prohibited from filing any further appeals.  Indeed, the record

21  shows that he filed numerous other grievances and appeals while at KVSP.  (*See* Doc. No. 99-3

22  ¶¶ 24-32, 33-38, 74-81, 106-109, 113-117, 118-120, 121-125, 126-129, 130-134, 135-137, 138-

23  143, 144-146, 147-150, 151-156, 157-160, 164-165; Exhs. C, D, J, S, T, U, V, W, X, Y, Z, AA,

24  BB, CC, DD, EE, FF, GG)).  While the Ninth Circuit has held that a plaintiff need not

25  demonstrate "a total chilling" of his First Amendment activity to perfect a retaliation claim, it

26  nevertheless requires some allegation that plaintiff's First Amendment rights were chilled, if not

27  silenced.  *Rhodes v. Robinson*, 408 F.2d 559, 568-69 (9th Cir. 2005).  Here, Plaintiff does not

28  assert that his First Amendment rights were chilled in any way and Plaintiff's record of prolific

First Amendment activity at KVSP after the purported mishandling of his six October 31, 2018 appeals would strongly belie such a claim.

Second, Plaintiff was not prevented from resubmitting appeals or seeking further review of Lucas' decisions.  The records shows that Plaintiff did just that on many occasions.  *See, e.g.,* Appeal Log KVSP-O-18-03301 (Doc. No. 99-3 at 156-165, Exh. K), Appeal Log KVSP-O-18-03302 (Doc. No.  99-3 at 166-189, Exh. L); Appeal Log KVSP-O-18-01523 (Doc. No. 99-4 at 76-95, Exh. Y).

Finally, as explained below, Plaintiff cannot rely on the "Appeal Abuse Warning" as chilling evidence given its legitimate correctional objective.  Accordingly, Plaintiff cannot establish another of the essential elements of a retaliation claim: a chilling of his First Amendment rights.

### 5.  No Legitimate Correctional Objective

To establish a First Amendment retaliation claim, a plaintiff must set forth facts demonstrating that the defendant's actions did not advance a legitimate correctional objective. *Chavez*, 12 F.4th at 1001.  A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

Here, there is no genuine dispute that Defendant Lucas' actions in handling each of Plaintiff's appeals reasonably advanced a legitimate correctional goal.  His responses to each of the challenged appeals were consistent with applicable Title 15 regulations, which are designed to prevent the KVSP and CDCR grievance systems from being overwhelmed by excessive inmate filings. *See Alexander v. Garza*, 2022 WL 1525451 (E.D. Cal. May 13, 2022) (finding an "appeal was properly rejected because submitting more than one appeal for initial review within a 14 calendar day period is considered excessive, unless the inmate is submitting an emergency appeal" and noting that "[a]ppeals that are deemed a misuse of the appeals process can be rejected and the appeals office may place restrictions on an inmate who abuses the appeals process").  In issuing an "Appeal Abuse Warning" Lucas merely alerted Plaintiff that he *may* face sanctions if

24

he continues to file excessive inmate appeals and the warning clearly served a legitimate correctional goal. *Heilman v. Sanchez*, 583 F. App'x 837, 839 (9th Cir. 2014) ("The 'Appeals Abuse Warning' issued against [plaintiff] served legitimate correctional goals and cannot support a retaliation claim," citing *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir.1994) (noting that "legitimate penological goals" include "preserving institutional order and discipline")).  There is absolutely no evidence that Lucas mishandled, lost, or failed to process any of Plaintiff's appeals. Lucas' rejection of Plaintiff's six appeals filed on October 31, 2018 was taken pursuant to Title 15 Section 3084.4(a)(1), which precludes the filing of more than one non-emergency appeal every 14 days, which again advances the legitimate correctional goal of ensuring institutional order and conserving limited staff resources.  Thus, there is no genuine dispute that Lucas' contested actions reasonably advanced legitimate correctional goals and thus were not retaliatory.

### E.  Qualified Immunity

A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).  This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the constitutional right at issue." *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)).  "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful." *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017).  The plaintiff bears the burden

1  of establishing that the right alleged was clearly established. *Moran v. Washington*, 47 F.3d 839,

2  844 (9th Cir. 1998).

3       Defendant argues in the alternative that even if the Court finds he violated Plaintiff's First

4  Amendment rights, he is entitled to qualified immunity because no reasonable appeals

5  coordinator would have known at the time that clearly established law prohibited him from

6  screening Plaintiff's staff complaints.  (Doc. No. 99 at 16-17).  As noted above, the Court does

7  not find that Plaintiff establishes a *prima facie* case of retaliation, thus the Court need not decide

8  whether Lucas is entitled to qualified immunity.

9       Accordingly, it is **RECOMMENDED**:

10      The district court GRANT Defendant A. Lucas' motion for summary judgment (Doc. No.

11      99) for the reasons set forth above, enter judgment in Defendant's favor, and close this

12      case.

13                      **NOTICE TO PARTIES**

14      These findings and recommendations will be submitted to the United States District Judge

15  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

16  days after being served with these findings and recommendations, a party may file written

17  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

18  Findings and Recommendations."  Parties are advised that failure to file objections within the

19  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

20  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

21

22  Dated:    August 19, 2024

23                                    HELENA M. BARCH-KUCHTA
                                      UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28

26